# EXHIBIT B

...legal opinion. It is the responsibility of the parties receiving this form to review the legal documents forwarded and to take the appropriate action.

# NATIONAL REGISTERED AGENTS, INC.
## SERVICE OF PROCESS SUMMARY TRANSMITTAL FORM

To:  MICHAEL J. HARRINGTON
     ELI LILLY AND COMPANY
     LILLY CORPORATE CENTER
     INDIANAPOLIS, IN 46285-0000

SOP Transmittal #    OH12795

Telephone  (800) 767-1553
Fax    (609) 716-0820

Defendant:   ELI LILLY AND COMPANY

Enclosed herewith are legal documents received on behalf of the above captioned entity by National Registered Agents, Inc. or its Affiliate in the State of OHIO on this 13th day of June, 2005. The following is a summary of the document(s) received:

1)   **Title of Action:**   CARL SPRATT -VS- ELI LILLY & CO. ETAL

2)   **Document(s) served:**

| | | |
|---|---|---|
| X   Summons | ___ Subpoena | ___ Injunction |
| X   Complaint | ___ Third Party Complaint | ___ Notice of: _____ |
| ___ Petition | ___ Demand for Jury Trial | ___ Mechanics Lien |
| ___ Garnishment | ___ Default Judgement | X   Other: COMPLAINT STATEMENT OF FACTS |

3)   **Court of Jurisdiction/**       COMMON PLEAS COURT CUYAHOGA COUNTY OHIO
     **Case & Docket Number:**     CV05559408

4)   **Amount claimed, if any:**     SEE ENCLOSED

5)   **Method of Service:**

| | | | |
|---|---|---|---|
| ___ Personally Served By: | ___ Process Server | ___ Deputy Sheriff | ___ U.S. Marshall |
| X   Delivered Via: | X   Certified Mail | ___ Regular Mail | ___ Facsimile |
| ___ Other: _____ | | | |

6)   **Date and Time of Service:**   6/13/2005 1:34:42 PM

7)   **Appearance/Answer Date:**   28 DAYS

8)   **Plaintiff's Attorney:**   J.P. SAWYER
                                  BEASLEY, ALLEN, CROW, METHVIN,
                                  PORTIS & MILES
                                  P.O. BOX 4160
                                  MONTGOMERY, AL. 36104
                                  334-269-2343

9)   **Federal Express Airbill #**   790050964545

10)  **Call Made To:**  Not required

11)  **Special Comments:**

*M. J. HARRINGTON*

*JUN 1 4 2005*

NATIONAL REGISTERED AGENTS, INC.                    **Copies To:**

Transmitted by: Tena  Lumpkins

The information contained in this Summary Transmittal Form is provided by National Registered Agents, Inc. for the informational purposes only and should not be considered a legal opinion. It is the responsibility of the parties receiving this form to review the legal documents forwarded and to take the appropriate action.

**ORIGINAL.**

SUMMONS IN A CIVIL ACTION    COURT OF COMMON PLEAS, CUYAHOGA COUNTY JUSTICE CENTER
CLEVELAND, OHIO 44113

| CASE NO. | | SUMMONS NO. |
| CV05559408 | D1 CM | 6757466 |

Rule 4 (B) Ohio

Rules of Civil
Procedure

| CARL SPRATT,  A MINOR | |
| VS | PLAINTIFF |
| ELI LILLY & CO. ETAL | DEFENDANT |

**SUMMONS**

ELI LILLY AND COMPANY
NATIONAL REGISTERED AGENTS INC
145 BAKER STREET
MARION OH 43302-0000

You have been named defendant in a complaint
(copy attached hereto) filed in Cuyahoga County
Court of Common Pleas, Cuyahoga County Justice
Center, Cleveland, Ohio 44113, by the plaintiff
named herein.

You are hereby summoned and required to
answer the complaint within 28 days after service of
this summons upon you, exclusive of the day of
service.

Said answer is required to be served on:



Said answer is required to be served on Plaintiff's
Attorney (Address denoted by arrow at left.)

Plaintiff's Attorney

J.P. SAWYER
P.O. BOX 4160

MONTGOMERY, AL 36104-0000

Your answer must also be filed with the court
within 3 days after service of said answer on
plaintiff's attorney.

If you fail to do so, judgment by default will be
rendered against you for the relief demanded in the
complaint.

Case has been assigned to Judge:

RONALD SUSTER
Do not contact judge. Judge's name is given for
attorney's reference only.

GERALD E. FUERST
Clerk of the Court of Common Pleas

| DATE |
| Jun 9, 2005 |

By _J. Cauchu_
Deputy

COMPLAINT FILED  04/06/2005

ELI LILLY AND COMPANY
NATIONAL REGISTERED AGENTS INC
145 BAKER STREET
MARION OH 43302-0000

SN130

IN THE COMMON PLEAS COURT OF CUYHOGA COUNTY, OHIO

FILED

2005 APR -6  A 8: 45

GERALD E. FUERST
CLERK OF COURTS
CUYAHOGA COUNTY

CARL SPRATT, a minor,
By and through his Natural Parent,
Legal Guardian and Next Friend,
TAWANA SPRATT, 3606 Rolliston
Shaker Heights, Ohio 44120

Plaintiffss,

vs.

ELI LILLY AND COMPANY; and
FICTITIOUS DEFENDANTS A, B,
C, AND D, being those persons, firms
or corporations whose fraud, scheme
to defraud, and/or other wrongful
conduct caused or contributed to the
Plaintiffs's injuries and damages, and
whose true names and identities are
presently unknown to the Plaintiffss but
will be substituted by amendment when
ascertained,

Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

CV 05 559408    Complaint

33208289

Case No.: _____    CV05559408
Pre-S.B.80 Case

33296419

$_____ DEPOSITED
154547
APR - 6 2005
SECURE COSTS
GERALD E. FUERST, Clerk of Courts
PER _____ DEPUTY

## COMPLAINT

### STATEMENT OF FACTS

1. This is a civil action brought on behalf of Plaintiff, Tawana Spratt, on behalf of her minor child, Carl Spratt. Plaintiffs, Tawana Spratt and Carl Spratt, are citizens of the United States and the State of Ohio.

2. Defendant, Eli Lilly and Company (hereinafter referred to as "Lilly"), is incorporated in the State of Indiana and has its principal place of business in Indianapolis, Indiana. At all times relevant herein, Lilly was in the business of designing, testing, manufacturing, labeling, advertising, marketing, promoting, selling and distributing

pharmaceuticals and other products, including Zyprexa (Olanzapine). Lilly does business in the State of Ohio and, on information and belief, at all times relevant, manufactured, advertised, marketed, promoted, sold and distributed Zyprexa in the State of Ohio.

3. Fictitious Defendants A, B, C, and D are those persons, sales representatives, district manager, firm or corporations whose fraud, scheme to defraud, and/or other wrongful conduct caused or contributed to the injuries sustained by the Plaintiffs, whose true and correct names are unknown to Plaintiffs at this time, but will be substituted by amendment when ascertained. At all times relevant hereto, the Fictitious Defendants were in the business of marketing, selling and distributing the pharmaceutical Zyprexa in and from the State of Ohio.

4. Defendant Lilly is engaged, or has been engaged in the design, manufacture, testing, analyzing, distribution, recommendation, merchandising, advertising, promotion, supply and sale to distributors and retailers for resale to physicians, hospitals, medical practitioners and the general public, Zyprexa in the State of Ohio and sold and promoted the drug to Plaintiff, Tawana Spratt, for her minor son, Carl Spratt in the year 2001, who ingested Zyprexa during that time.

5. As a direct and proximate result of the ingestion of Zyprexa, Plaintiffs were caused to suffer injuries and damages, including but not necessarily limited to physical pain and suffering including diabetes, mental and emotional anguish and distress and economic loss. Plaintiffs were caused to suffer serious and permanent injuries to his health, strength and activity, and severe shock to his nervous system, and will continue to suffer mental pain, all to his general damage in a sum with the jurisdiction of this Court.

6. As a direct and proximate result of the ingestion of Zyprexa Plaintiffs were required to, and did, employ physicians to examine, treat and care for him and Plaintiffs incurred, and will incur hospital, medical and incidental expenses.

7. As a further direct and proximate result of the ingestion of Zyprexa, Plaintiffs were prevented from attending to his usual occupation and thereby sustained a loss of earnings and a diminished earning capacity.

8. Zyprexa is among a group of drugs called the "atypical antipsychotic drugs" prescribed for the treatment of schizophrenia and bipolar mania.

9. At all times relevant, the Defendants themselves, or by use of others, did manufacture, create, design, test, label, sterilize, package, distribute, supply, market, sell, advertise, warn and otherwise distribute Zyprexa.

10. Zyprexa has been widely advertised by the Defendants as effective treatment for bipolar disorder, with fewer adverse side effects than other treatments.

11. The Defendants, beginning in 1996, aggressively marketed and sold Zyprexa by falsely misleading potential users about the products and by failing to protect users from serious dangers which Defendants knew or should have known to result from use of Zyprexa.

12. Defendants widely and successfully marketed Zyprexa in the United States and in the District of Columbia. Defendants undertook advertising campaigns promoting the virtues of Zyprexa in order to induce widespread use of the product.

13. The advertising, by affirmation, misrepresentation or omission, falsely and fraudulently sought to create the image and impression that the use of Zyprexa was safe

for human use, had fewer side effects and adverse reactions than other methods of treatment for bipolar disorder.

14. Defendants purposefully minimized and understated health hazards and risks associated with Zyprexa. Defendants, through promotional literature, deceived potential users of Zyprexa and their physicians by relaying positive information, including testimonials from satisfied users and manipulating statistics to suggest widespread acceptability, while downplaying the known adverse and serious health effects of the drug. Defendants, falsely and fraudulently, withheld relevant information from potential users of Zyprexa.

15. Plaintiffs are informed and believe and thereon allege that total profits from the sale of Zyprexa exceeds hundreds of millions of dollars.

16. At least as early as 1998, the medical literature conclusively revealed data which linked Zyprexa with causing diabetes mellitus. An indicative report was published on October 15, 998 in the Society of Biological Psychiatry, Volume 44, Number 8, pages 778-83, titled "Novel Antipsychotics and New Onset Diabetes." There are other numerous reports and studies throughout the medical literature from 1998 through the present which detail a causal link between the ingestion of Zyprexa and the development of hyperglycemia, diabetes and ketoacidosis. The known danger that Defendants said the product Zyprexa was causing hyperglycemia and diabetes was never indicated by Defendants to the Plaintiffs' physician who prescribed the product to Plaintiffs. Plaintiffs were ignorant of said defect of said product prior to ingesting Zyprexa.

17. The physician who prescribed Zyprexa to Plaintiffs relied on the representations made to him by Defendants prior to the date of prescribing Zyprexa for

use. The physician relied on the representations regarding the safety of Zyprexa and would not have recommended for use or prescribed Zyprexa if he had known the true facts regarding the safety of Zyprexa.

18. Prior to the date upon which the aforesaid product was prescribed for Plaintiffs, Defendants knew, or should have known, that the product was extremely dangerous and unsafe for use by the general public for the aforesaid purpose. The dangers of this product included, by way of example, the likelihood of developing hyperglycemia, diabetes mellitus or ketoacidosis and other injuries. Defendants failed to take appropriate action to cure the nature of these defects or to appropriately warn users of the product or their physicians of such dangerous characteristics.

19. Defendants thereby acted with malice towards Plaintiffs, who accordingly requests that the trier of fact, in the exercise of its sound discretion, award additional damages for the sake of example and for the purpose of punishing the Defendants for their conduct, in an amount sufficiently large to be an example to others and to deter these Defendants and others from engaging in similar conduct in the future. The aforesaid wrongful conduct was done with the advance knowledge, authorization, and/or ratification of an officer, director, and/or managing agent of Defendants.

## COUNT I

### (Strict Liability in Tort, Failure to Warn)

20. Plaintiffs reallege paragraphs 1-19 of the Complaint as if set out here in full.

21. At all times herein mentioned, the aforesaid product was defective and unsafe in manufacture, and was so at the time it was distributed by Defendants and ingested by Plaintiffs. The aforesaid product was defective in that it was not properly prepared

and/or was not accompanied by proper warnings regarding all possible adverse side effects associated with the use of Zyprexa, and given the severity of the adverse effects, the warnings given did not accurately reflect the symptoms and severity of the adverse effects. The product was also defective in that the product manufactured and distributed differed from the manufacturer's intended results. These defects caused serious injuries to the user when used in its intended and foreseeable manner, i.e., when it was ingested as prescribed and in the manner recommended by Defendants.

22. Defendants knew that the aforesaid product was to be used by the user without inspection for defects therein.

23. The aforesaid product was unaccompanied by warnings of its dangerous propensities that were known or reasonably scientifically knowable at the time of distribution. The reasonably foreseeable use of the product, i.e., ingestion to aid in treating bipolar disorder, involved substantial dangers not readily recognizable by the ordinary user of the product. Defendants failed to warn of the known or knowable likelihood of injury including, but not limited to, the likelihood the user would develop diabetes mellitus.

24. The Zyprexa designed, manufactured, tested, analyzed, distributed, recommended, merchandised, advertised, promoted, supplied and sold to distributors by Defendants was further defective due to inadequate post-marketing warning or instruction because, after Defendants knew or should have known of the risks of injury from Zyprexa, they failed to promptly respond to and warn about the likelihood of injury, including but not limited to, diabetes mellitus.

25. Plaintiffs did not know, nor had reason to know, at the time of the use of the aforesaid product, or at any time prior thereto, of the existence of the foregoing described defects. These defects caused the herein described injuries and damages to Plaintiffs.

26. Defendants knew that the aforesaid product was to be used by the user without inspection for defects therein and that the aforesaid product was unaccompanied by warnings of its dangerous propensities that were known or reasonably scientifically knowable at the time of distribution.

27. Plaintiffs neither knew, nor had reason to know, at the time of the use of the aforesaid product or at any time prior there, of the existence of the foregoing described defect.

WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

## COUNT II

### (Strict Products Liability Pursuant to Restatement Second of Torts Section 402A 1965)

28. Plaintiffs reallege paragraph 1-27 of the Complaint as if set out here in full.

29. The Zyprexa manufactured and/or supplied by Defendants was placed into the stream of commerce by Defendants in a defective and unreasonably dangerous condition in that the foreseeable risks exceeded the benefits associated with the design or formulation.

30. Alternatively, the Zyprexa manufactured and/or supplied by Defendants, was defective in design or formulation in that when it was placed in the stream of commerce, it was unreasonably dangerous, more dangerous than an ordinary consumer would expect and more dangerous than other forms of treatment for bipolar disorder.

31. The Zyprexa manufactured and/or supplied by Defendants, was defective due to inadequate warnings or instructions because the Defendants knew or should have known, that the product created a risk of harm to consumers and these Defendants failed to adequately warn of said risks.

32. The Zyprexa manufactured and/or supplied by Defendants was defective due to inadequate warning and/or inadequate testing.

33. The Zyprexa manufactured and/or supplied by Defendants was defective due to inadequate post-marketing warning or instruction because after the Defendants knew or should have known of the risk of injury from Zyprexa, they failed to provide adequate warnings to users or consumers of the product and continued to promote the product.

34. As a proximate and legal result of the defective and unreasonably dangerous condition of these products manufactured and/or supplied by Defendants, Plaintiffss was caused to suffer the herein described injuries and damages.

WHEREFORE, Plaintiffs pray for judgment against Defendants as hereinafter set forth.

## COUNT III

### (Negligence)

35. Plaintiffs reallege paragraphs 1-34 of the Complaint as if set out in full herein.

36. At all times herein mentioned, Defendants had a duty to properly manufacture, compound, test, inspect, package, label, distribute, market, examine, maintain supply, provide proper warnings and prepare for use and sell the aforesaid product.

37. At all times herein mentioned, Defendants knew, or in the exercise of reasonable care, should have known, that the aforesaid product was of such a nature that if it was not properly manufactured, compounded, tested, inspected, packaged, labeled, distributed, marketed, examined, sold, supplied and prepared and provided with proper warnings, it was likely to injure the product's user.

38. Defendants so negligently and carelessly manufactured, compounded, tested, failed to test, inspected, failed to inspect, packaged, labeled, distributed, recommended, displayed, sold, examined, failed to examine, over promoted and supplied the aforesaid products, that it was dangerous and unsafe for the use and purpose for which it was intended.

39. Defendants were aware of the probably consequences of the aforesaid conduct. Despite the fact that Defendants knew, or should have known, that Zyprexa caused serious injuries, it failed to disclose the known or knowable risks associated with the products as set forth above. Defendants willfully and deliberately failed to avoid those consequences, and in doing so, Defendants acted with a conscious disregard of the safety of Plaintiffs.

40. As a result of the carelessness and negligence of Defendants, the aforesaid product caused Plaintiffs to thereby sustain the damages and injuries as herein alleged.

WHEREFORE, Plaintiffs pray for judgment against Defendants as hereinafter set forth.

## COUNT IV

### (Breach of Implied Warranty)

41. Plaintiffs reallege paragraph 1-40 of the Complaint as if set out here in full.

42. At all times mentioned herein, Defendants manufactured, compounded, packaged, distributed, recommended, merchandised, advertised, promoted, supplied and sold the aforesaid product, and prior to the time it was prescribed to Plaintiffs, Defendants impliedly warranted to Plaintiffs, and to his agents, that the product was of merchantable quality and safe for the use for which it was intended.

43. Plaintiffs and his agents relied on the skill and judgment of Defendants in using the aforesaid product.

44. The product was unsafe for its intended use and it was not of merchantable quality as warranted by Defendants in that it had very dangerous propensities when put to its intended use and would cause severe injury to the user. The aforesaid product was unaccompanied by warnings of its dangerous propensities that were either known or reasonably scientifically knowable at the time of distribution. The aforesaid product did cause Plaintiffs to sustain damages and injuries as herein alleged.

45. After Plaintiffs was made aware of his injuries as a result of the aforesaid product, notice was duly given to Defendants of the breach of said warranty.

WHEREFORE, Plaintiffs pray for judgment against Defendants as hereinafter set forth.

## COUNT V

### (Breach of Express Warranty)

46. Plaintiffs reallege paragraphs 1-45 of the Complaint as if set out fully herein.

47. The aforementioned manufacturing, compounding, packaging, designing, distributing, testing, constructing, fabricating, analyzing, recommending, merchandising,

advertising, promoting, supplying and selling of the aforesaid product was expressly warranted to be safe for use by Plaintiffs and other members of the general public.

48. At the time of the making of the express warranties, Defendants had knowledge of the purpose for which the aforesaid product was to be used and warranted the same to be, in all respects, fit, safe, and effective and proper for such purpose. The aforesaid product was unaccompanied by warnings of its dangerous propensities that were either known or knowable at the time of distribution.

49. Plaintiffs and their physicians reasonably relied upon the skill and judgment of Defendants and upon said express warranty in using the aforesaid product. The warranty and representations were untrue in that the product caused severe injury to Plaintiffs and was unsafe and, therefore, unsuited for the use for which it was intended. The aforesaid product could and did thereby cause Plaintiffs to sustain damages and injuries as herein alleged.

50. As soon as the true nature of the product, and the fact that the warranty and representations were false, were ascertained, Defendants were notified of the breach of said warranty.

WHEREFORE, Plaintiffs pray for judgment against Defendant as hereinafter set forth.

## COUNT VI

### (Fraud)

51. Plaintiffs reallege paragraphs 1-50 of the Complaint as if set out fully herein.

52. Defendants falsely and fraudulently represented to Plaintiffs, his physicians and members of the general public, that the aforesaid product was safe for use to aid in

treating bipolar disorder. The representations by aid Defendants were in fact, false. The true facts include, but are not limited to, the fact that the aforesaid products were not safe for said purpose and was, in fact, dangerous to the health and body of Plaintiffs.

53. The representations by Defendants were, in fact, false. The true facts were that the products were not adequately tested, that there were frequent, severe, protracted, debilitating, difficult, life threatening and disabling side effects and adverse effects of the products, including but not limited to, the development of diabetes mellitus, that the products caused injuries, including but not limited to diabetes mellitus, and death and Defendants did not disclose or warn users and their physicians about the known risk of injury in using the products. Defendants misrepresented the safety of the products, represented that the products marketed were safe for use in bipolar disorder treatment, and concealed warnings of the known or knowable risks of injury in using the products.

54. When said Defendants made these representations, they knew they were false. Defendants made said representations with the intent to defraud and deceive Plaintiffs and with the intent to induce him to act in the manner herein alleged, i.e., to use the aforementioned product to aid in treatment of bipolar disorder.

55. At the time Defendants made the aforesaid representations and a the time Plaintiffs took the actions herein alleged, Plaintiffs and their physicians were ignorant of the falsity of these representations and reasonably believed them to be true. In reliance upon said representations, Plaintiffs were induced to, and did, use the aforesaid product as herein described. If Plaintiffs had known the actual facts, he would not have taken such action. The reliance of Plaintiffs and their physicians upon Defendants'

representations was justified because said representations were made by individuals and entities who appeared to be in a position to know the true facts.

56. As a result of Defendants' fraud and deceit, Plaintiffs were caused to sustain the herein described injuries and damages.

57. In doing the acts herein alleged, Defendants acted with oppression, fraud and malice, and Plaintiffs are therefore entitled to punitive damages to deter Defendants and others from engaging in similar conduct in the future. Said wrongful conduct was done with the advance knowledge, authorization and/or ratification of an officer, director and/or managing agent of Defendant.

WHEREFORE, Plaintiffs pray for judgment against Defendants as hereinafter set forth.

## COUNT VII

### (Negligent Misrepresentation)

58. Plaintiffs reallege paragraphs 2-57 of the Complaint as if set out fully herein.

59. Defendants had an absolute duty to disclose the true facts regarding the safety of Zyprexa as the only entities capable of knowing and reporting the true facts regarding the safety and testing of Zyprexa. Furthermore, Defendants had a duty to ensure it had a reasonable basis for making the representations as set forth above.

60. Defendants made the aforesaid representations with no reasonable ground for believing them to be true. They did not have accurate or sufficient representations. Furthermore, Defendants were aware that without such information they could not accurately make the aforesaid representations.

61. The aforesaid representations were made to the physician prescribing Zyprexa prior to the date it was prescribed to Plaintiffs and the physician relied on the representations about the safety of Zyprexa when prescribing Zyprexa to Plaintiffs.

62. At the time the aforesaid representations were made, Defendants concealed from Plaintiffs and his physicians their lack of information on which to base their representations and their consequent inability to make the aforesaid representations accurately.

63. The aforesaid representations were made by Defendants with the intent to induce Plaintiffs to act in the manner herein alleged, that is, to ingest Zyprexa as prescribed.

64. Defendants falsely represented to Plaintiffs, their physicians and members of the general public, that the aforesaid product was safe for use to aid in treatment of bipolar disorder. The representations by said Defendants were in fact, false. The true facts were that the aforesaid product was not safe for said purpose and was, in fact, dangerous to the health and body of Plaintiffs and thereby caused his injuries.

65. Defendants made the aforesaid representations with no reasonable ground for believing them to be true. They did not have accurate or sufficient information concerning these representations. Furthermore, Defendants were aware that without such information it could not accurately make the aforesaid representation.

66. At the time Defendants made the aforesaid representations, and at the time Zyprexa was prescribed to Plaintiffs, Plaintiffs and his physicians were ignorant of the falsity of these representations and reasonably believed them to be true. In reliance upon said representations, Plaintiffs ingested Zyprexa as herein described. If Plaintiffs had

known the actual facts, he would not have taken such action. The reliance of Plaintiffs and their physicians upon Defendants' representations were justified because said representations were made by individuals and entities who appeared to be in a position to know the true facts.

67. As a result of Defendants' false representations and concealment, Plaintiffs was caused to sustain the herein described injuries and damages.

WHEREFORE, Plaintiffs pray for judgment as hereinafter set forth.

## COUNT VIII

### (Fraud By Concealment)

68. Plaintiffs reallege paragraphs 1-67 of the Complaint as if set out herein.

69. At all times mentioned herein, Defendants had the duty and obligation to disclose to Plaintiffs, and to his physicians, the true facts concerning the aforesaid product; that is, that said product was dangerous, and defective, and how likely it was to cause serious consequences to users, including injuries as herein occurred, and how unnecessary it was to use said product for the purposes indicated. Defendants withheld the above to Plaintiffs, his physicians and the general public prior to the date Zyprexa was prescribed to Plaintiffs, while concealing the following material facts.

70. At all times mentioned herein, Defendants had the duty and obligation to disclose to Plaintiffs and to his physicians the true facts concerning the aforesaid product; that is, that use would cause injuries including but limited to, diabetes mellitus.

71. At all times herein mentioned, Defendants intentionally, willfully and maliciously concealed or suppressed the facts set forth above from Plaintiffs' physicians and therefore from Plaintiffs, with the intent to defraud as herein alleged.

72. At all times herein mentioned, neither Plaintiffs nor their physicians were aware of the facts set forth above, and had they been aware of said facts, they would not have acted as they did, that is, would not have utilized the product to aid in treatment of bipolar disorder.

73. As a result of the concealment or suppression of the facts set forth above, Plaintiffs sustained injuries and damages as hereinafter set forth.

74. In doing the action herein alleged, Defendants acted with oppression, fraud, and malice and Plaintiffs is therefore entitled to punitive damages in an amount reasonably related to Plaintiffs' actual damages, and to Defendants' wealth, and sufficiently large to be an example to others, and to deter these Defendants and others from engaging in similar conduct in the future.

75. That at all times herein mentioned, Defendants intentionally, willfully, and maliciously concealed or suppressed the facts set forth above from Plaintiffs' physicians and therefore from Plaintiffs, with the intent to defraud Plaintiffs as herein alleged.

76. At all times herein mentioned, neither Plaintiffs nor their physicians were aware of the facts set forth above, and had they been aware of said facts, they would not have acted as they did, that is, that Zyprexa would not have been prescribed to Plaintiffs and the minor child would not have ingested it.

77. As a result of the concealment or suppression of the facts set forth above, Plaintiffs suffered injuries and damages as hereinafter set forth.

78. In doing the action herein alleged, Defendants acted with oppression, fraud, and malice and Plaintiffs is therefore entitled to punitive damages in an amount reasonably related to Plaintiffs' actual damages, and to Defendants' wealth, and

sufficiently large to be an example to others, and to deter these Defendants and others from engaging in similar conduct in the future.

**WHEREFORE,** Plaintiffs pray for judgment against Defendants as hereinafter set forth.

**WHEREFORE,** Plaintiffs demand judgment against Defendants as follows:

1. For general damages in the amount of $10,000,000.00;

2. For past and future medical, hospital, incidental and service expenses according to proof;

3. For pre-judgment and post-judgment interest provided by law;

4. For economic losses according to proof;

5. For costs of suit herein;

6. For punitive or exemplary damages against all Defendants in the amount of $25,000,000.00; and

7. For such other and relief as the Court may deem just and proper.

Respectfully submitted,

J.P. SAWYER, Ohio Bar No. 0074907
Attorney for Plaintiffss

**OF COUNSEL:**

**BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.**
P.O. Box 4160
Montgomery, Alabama 36104
Telephone: (334)269-2343
Facsimile: (334)954-7555

## JURY DEMAND

Plaintiffs respectfully demands trial by jury on all counts in this cause.

OF COUNSEL

**Defendant's Address for Service:**

**Eli Lilly and Company**
**National Registered Agents, Inc.**
**145 Baker Street**
**Marion, Ohio 43302**